UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| -against- | 21-cv-5923 (ALC) |
| ERIC J. WATSON, OLIVER-BARRET LINDSAY, and GANNON GIGUIERE, | **OPINION & ORDER** |
| Defendants. | |

**ANDREW L. CARTER JR., United States District Judge**:

The Securities and Exchange Commission ("SEC") alleges securities violations by Eric J. Watson in connection with his role as a corporate insider and controlling shareholder of Long Island Iced Tea Corp. (now known as Long Blockchain Corp.) ("LTEA"). Following the SEC's numerous attempts to serve Watson, Watson eventually appeared in this action *pro se*. Watson now moves to dismiss the SEC's Complaint, contending that the SEC's claims are unfounded and that service was insufficient. Watson also brings forth an Amended Counterclaim against the SEC. The SEC opposes Watson's motion and moves to dismiss Watson's Amended Counterclaim.

The Court addresses both pending motions in this opinion. For the reasons set forth below, Watson's motion to dismiss the SEC's Complaint is **DENIED** with prejudice**,** and the SEC's motion to dismiss Watson's Amended Counterclaim is **GRANTED** with prejudice.

BACKGROUND

**I.     Factual Allegations**

On July 9, 2021, the SEC filed a Complaint alleging that Watson engaged in an insider trading scheme in late 2017. *See* ECF No. 1 ("Complaint"). As a corporate insider and

1

controlling shareholder of LTEA, Watson allegedly tipped a business associate, Oliver-Barret Lindsay, with material nonpublic information about LTEA's forthcoming announcement that it would significantly pivot its business from soft drink manufacturing to blockchain technology.[1] *Id.* ¶ 1. The SEC alleges that Watson sought help from Lindsay in promoting LTEA and that Lindsey served as a conduit between Watson and Gannon Giguiere—a stock promoter who owned a stock promotion website—who agreed to use his website to promote LTEA. *See id.* ¶¶ 32–37. As part of these efforts, Watson shared with Lindsay nonpublic draft announcements about LTEA's pivot, and Lindsay, in turn, provided the information to Giguiere. *See id.* ¶¶ 67–74.

On December 20, 2017, Giguiere purchased 35,000 LTEA shares at an average cost of $2.42 per share. *Id.* ¶ 78. On December 21, 2017, LTEA publicly announced its pivot to the blockchain business. *Id.* ¶ 79. Consequently, LTEA's trading volume and share price skyrocketed and closed that day at $6.91 per share. *Id.* ¶ 80. Less than two hours after the announcement, Giguiere sold all the LTEA shares he purchased the previous day, purportedly realizing $162,500 in illicit profits. *Id.* ¶ 81. The SEC alleges that Watson violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and 17 C.F.R. § 240.10b-5. *Id.* ¶ 6.

## II.     Service on Watson

Watson is a New Zealand citizen and was believed to have been residing in London, United Kingdom, when the Complaint was filed. *Id.* ¶ 13. On July 16, 2021—a week after the Complaint was filed—an article in *The New Zealand Herald* quoted Watson as saying, in part,

---

[1] The Complaint also named Lindsay and another defendant, Gannon Giguiere, who were both alleged to have been part of the insider trading scheme. On December 28, 2023, and September 20, 2024, the Court entered final consent judgments against Giguiere and Lindsay, respectively, resolving all the SEC's claims against them. *See* ECF Nos. 73, 99. Watson is the only remaining defendant in this case.

"Yes, it appears the SEC has filed a complaint . . . ."  ECF No. 27 ¶ 10, Ex. H, at 2.  On July 26, 2021, an individual named Mark Winters emailed the SEC claiming to represent Watson and noting that Watson resided in Europe.  ECF No. 27 ¶ 12, Ex. J.  On July 29, 2021, counsel for the SEC called Winters, who informed the SEC that Watson was aware of the Complaint and requested evidence of the charges against Watson.  ECF No. 27 ¶ 13.  On August 12, 2021, after SEC counsel asked Winters whether Watson would authorize Winters to accept service of the Complaint on Watson, Winters informed the SEC that Watson would not authorize him to accept service on his behalf and again iterated Watson's request for evidence against him.  ECF No. 27 ¶ 13, Ex. K.

On August 19, 2021, after finding an article in *The New Zealand Herald* regarding the liquidation of a company associated with Watson, SEC counsel contacted a court-appointed liquidator in New Zealand and asked for information as to Watson's whereabouts.  ECF No. 27 ¶ 3, Ex. C.  The liquidator provided an address for Watson in Ibiza, Spain.  *Id.*  In addition to this, the SEC also found another article published on April 17, 2021 by *The New Zealand Herald* which indicated that Watson was residing in Ibiza.  ECF No. 27 ¶ 6, Ex. E.

On October 18, 2021, the SEC notified the Court that Watson was apparently residing in Spain.  ECF No. 12.  The SEC advised the Court that, on September 9, 2021, it had begun the process of serving Watson pursuant to the Hague Convention by sending its request to Spain's Central Authority and providing it with Watson's purported address in Ibiza.  *Id.*; *see also* ECF No. 27 ¶ 4.  On February 2, 2022, the SEC's New York office received notice from Spain's Central Authority that it had made two unsuccessful attempts to serve Watson at the address provided.  ECF No. 27 ¶ 5.  The SEC also contacted three attorneys who represented Watson in a

suit against him in the United Kingdom, but two of the attorneys disclaimed representation of Watson and the other attorney did not respond. ECF No. 27 ¶ 9, Ex. I.

On April 25, 2022, the SEC requested that the Court issue an order permitting service on Watson by publication. ECF Nos. 26–28. On October 5, 2022, the Court granted the SEC's motion to serve Watson by publication and directed the SEC to publish a notice of the action in *The International New York Times* once a week for four consecutive weeks. ECF No. 42. The Court also ordered Watson to respond to the Complaint within twenty-one days from the date of the last publication. *Id.* The SEC published the notice in *The International New York Times* on October 28, November 3, November 9, and November 14, 2022. ECF No. 45, Ex. A. Watson failed to timely respond to the Complaint by December 5, 2022 (twenty-one days after the last publication in *The International New York Times*) and, on January 9, 2023 the SEC filed its Certificate of Service on Watson. *See* ECF No. 45. On February 3, 2023, the SEC filed a request for a Certificate of Default against Watson, and the Clerk of Court issued a Certificate of Default against Watson that same day. ECF Nos. 46, 48.

Following the issuance of the Certificate of Default and before Watson's appearance in this suit, two law firms contacted the SEC, indicating that they represented Watson and were interested in settlement discussions. *See* ECF No. 101 ¶ 5–16. However, no law firm or counsel for Watson ever appeared in this case.

### III. Watson's Appearance

On June 14, 2024, an attorney for Watson informed the SEC that Watson would represent himself in the matter thereafter. *Id.* ¶ 16. That same day, Watson emailed SEC counsel and advised that he would be proceeding *pro se* in this action. *Id.* ¶ 17. On June 18, 2024, the parties discussed a possible settlement, but no agreement was reached. *Id.* ¶ 19. That same day,

Watson sent an email to info@nysd.uscourts.gov asking that SEC counsel provide the Court with Watson's motion to set aside the entry of default, contending mainly that he was improperly served. *Id.* ¶ 20; *see also* ECF No. 79, Ex. A. The SEC consented to Watson's application and his being provided an opportunity to answer or otherwise respond to the Complaint. *See* ECF No. 79.

### IV.     Recent Procedural History

On July 1, 2024, Watson filed a Counterclaim, requesting dismissal for improper service, as well as monetary damages for violations for reputational damage and losses incurred as a result of the SEC's claims against him, which he alleges are unfounded. *See* ECF No. 82. On August 13, 2024, the SEC filed a letter requesting a premotion conference ahead of its anticipated motion to dismiss Watson's Counterclaim, primarily on the basis that Section 21(g) of the Exchange Act bars the consolidation of counterclaims in SEC enforcement actions when the SEC does not consent. *See* ECF No. 90. On August 26, 2024, the Court granted Watson leave to amend his Counterclaim by September 20, 2024 and also set forth a briefing schedule for (1) the SEC's motion to dismiss Watson's Amended Counterclaim and (2) Watson's motion to dismiss the SEC's Complaint. ECF No. 94. On September 10, 2024, Watson emailed the motion to dismiss the SEC's Complaint and the Amended Counterclaim to the Court in a single document that was docketed on September 13, 2024. ECF No. 98. The Amended Counterclaim consisted of four claims alleging that the SEC violated his due process rights, negligently investigated and prosecuted Watson, abused process, and violated the Federal Tort Claims Act. *Id.*

On October 11, 2024, the SEC filed its motion to dismiss the Amended Counterclaim as well as a declaration and memorandum of law in support of its motion to dismiss the Amended

Counterclaim and its opposition to Watson's motion to dismiss the Complaint. ECF Nos. 100–02. On October 31, 2024, Watson filed his opposition to the SEC's motion to dismiss the Amended Counterclaim and his reply in further support of his motion to dismiss the SEC's Complaint. ECF Nos. 104-1 (sealed), 105-1 (redacted). On November 15, 2024, the SEC filed its reply in further support of its motion to dismiss the Amended Counterclaim. ECF No. 108. On November 18, 2024, Watson submitted a proposed surreply in opposition to the SEC's motion to dismiss the Amended Counterclaim and requested leave of Court to file the surreply. ECF No. 110-1. On November 20, 2024, the Court accepted Watson's proposed surreply. ECF No. 111.

## LEGAL STANDARD

In deciding a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *SEC v. Lyon*, 529 F.Supp.2d 444, 449 (S.D.N.Y. 2008). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.") For the pleadings to state a plausible claim to relief, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court's function in resolving a motion to dismiss is not to "weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Moreover, a court's "consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or

6

incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *McKenzie v. Gibson*, No. 07 -CV- 6714, 2008 WL 3914837, at *2 (S.D.N.Y. Aug. 25, 2008) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).

Federal Rule of Civil Procedure 12(b)(5) permits a party to move for dismissal of a complaint based on inadequate service of process. Fed. R. Civ. P. 12(b)(5). "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[ ] to matters outside the complaint to determine whether it has jurisdiction." *Cassano v. Altshuler*, 186 F.Supp.3d 318, 320 (S.D.N.Y. 2016). "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service." *Vantone Grp. Ltd. Liab. Co. v. Yangpu Ngt Indus. Co.*, No. 13-CV-7639, 2016 WL 3926449, at *2 (S.D.N.Y. July 15, 2016) (citation omitted); *accord Khan v. Khan*, 360 Fed. Appx. 202, 203 (2d Cir. 2010) (summary order). To resolve a motion made under Rule 12(b)(5), the Court must "look to matters outside the complaint." *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 311 (S.D.N.Y. 2008). Even if a district court finds that a defendant was not properly served, such a finding "does not [ ] require dismissal of [the] action, since . . . proper service may still be obtained." *SEC v. Gilbert*, 82 F.R.D. 723, 727 (S.D.N.Y. 1979) (citing *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972)).

Additionally, "[a] document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted) (internal quotations omitted). In particular, "the pleadings of a pro se plaintiff . . . should be interpreted to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotations omitted). *Pro se* status, however, "does not exempt a

party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citations omitted).

## DISCUSSION

Although Watson does not explicitly move to dismiss the complaint on the basis that the SEC's Complaint fails to state a claim, he notes the SEC's purported withholding of exculpatory evidence against him, including the existence of a marketing contract and non-disclosure agreement (NDA) between Lindsay's firm and LTEA. The Court construes this as an attempt by Watson to raise factual issues at the motion to dismiss stage, thereby challenging the sufficiency of the SEC's claims against him. As the Court explains, these arguments are unripe at this juncture.

The remaining motions can be decided by the close application of regulations and procedural rules, all of which bear heavily on this action. Watson's motion to dismiss the Complaint contends that the SEC's attempts at service of the Complaint were so insufficient that they violated his due process rights. But the record shows that the SEC's service conformed with Federal Rule of Civil Procedure 4. With respect to its motion to dismiss Watson's Amended Counterclaim, the SEC posits that any counterclaims in this action are precluded by Section 21(g) of the Exchange Act, which bars the consolidation of a defendant's counterclaims in an SEC proceeding unless the SEC consents to their consolidation. The Court concludes that the SEC's action must proceed as against Watson and that Watson's Amended Counterclaim against the SEC in these proceedings must necessarily be dismissed.

    **I.**    **Watson's Arguments as to the SEC's Evidence Against Him Are Irrelevant in Resolving the Motions**

Watson effectively asks the Court to consider the evidence in this case and find that the SEC improperly brought the claims against him, but this request is premature. The Court's job

right now is to determine whether the SEC's Complaint is sufficiently pleaded as a matter of law and it cannot "weigh the evidence that might be presented at trial" when resolving this motion. *See Goldman*, 754 F.2d at 1067. Indeed, in connection with a prior motion to dismiss the Complaint filed by Defendant Guguiere in this action, the Court has previously concluded that the SEC sufficiently alleged that Watson engaged in insider tipping. *See SEC v. Watson*, 659 F. Supp. 3d 409, 416–17 (S.D.N.Y. 2023). In resolving that motion, the Court considered only the sufficiency of the SEC's pleadings. The same pleadings are in question here and the Court concludes once again that they are sufficient.

The Court nonetheless addresses the question of alleged exculpatory evidence. Watson notes in his Amended Counterclaim that the SEC failed to disclose potentially exculpatory evidence to the Court in its Complaint against him, which he argues runs afoul of the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963). But this invocation is misapplied. The *Brady* Rule requires the disclosure to a *criminal* defendant of any exculpatory evidence possessed by the government, but *Brady* is inapplicable where, as here, the SEC's claims are brought in a *civil* suit brought by the SEC in federal court. *See SEC v. Pentagon Cap. Mgmt. PLC*, No. 08-CV-3324, 2010 WL 4608681, at *1 (S.D.N.Y. Nov. 12, 2010) (citation omitted) ("In this district, the application of *Brady* to SEC enforcement actions has been flatly rejected."). It is possible that Watson may gather evidence in discovery to defeat the claims against him, but the Court cannot render any factual determinations at this stage. *See id.* at *2. ("In light of the right to conduct extensive pretrial discovery afforded [to] defendants in SEC civil enforcement actions, and the extensive discovery that Defendants have been able to conduct in this proceeding, there is no basis for extending *Brady* or *Giglio* to this proceeding.").

This is true even in light of a document submitted by Watson, which he purports to be a marketing contract between Chedwick Marketing (a firm controlled by Defendant Lindsay) and LTEA, and which incorporates an NDA clause. *See* ECF No. 104-2. Watson argues that this evidence shows that Lindsay was authorized to receive confidential information, thereby contradicting the SEC's allegations against Watson. He also maintains that the SEC must have been aware of this contract given the discovery in this case thus far. At this stage, however, a court may only consider extrinsic documents if they are "incorporated by reference" into the complaint or "the complaint 'relies heavily upon [their] terms and effect,' which makes the document[s] 'integral' to the complaint." *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 59–60 (S.D.N.Y. 2010) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). The Complaint does not rely upon or even reference the contract between Chedwick Marketing and LTEA. More importantly, while it remains to be seen whether Plaintiff can prove his claims, "courts cannot resolve factual disputes when deciding a 12(b)(6) motion" and the Court therefore cannot dismiss the Complaint on this basis. *See Cyber Apps World, Inc. v. EMA Fin., LLC*, 645 F. Supp. 3d 281, 289 (S.D.N.Y. 2022).

## II. The SEC's Complaint Survives Because There Is a Showing of Sufficient Process on Watson

Watson also argues that the SEC's Complaint against him should be dismissed because he was never properly served. The Court construes Watson's defense against the SEC's Complaint as a motion asserting insufficient service of process under Federal Rule of Civil Procedure 12(b)(5). "In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons." *DeLuca*, 695 F. Supp. 2d at 64 (citing Fed. R. Civ. P. 4). Here, where a foreign party is to be served, Federal Rule of Civil Procedure 4(f) governs the methods of service:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice…; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). "When a defendant challenges service of process, 'the burden of proof is on the plaintiff to show the adequacy of service.'" *DeLuca*, 695 F. Supp. 2d at 64. Unlike the analysis in the previous section, the Court can—indeed, must—"look to matters outside the complaint" to resolve questions of improper service. *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 311 (S.D.N.Y. 2008). Moreover, the method of service must "comport[] with constitutional notions of due process." *SEC v. Anticevic*, No. 05-CV-6991, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009).

Courts in this district consider may order alternative service under Rule 4(f)(3) upon a plaintiff's showing that "'[(1) it] has reasonably attempted to effectuate service on defendant, and (2) . . . that the circumstances are such that the court's intervention is necessary.'" *Convergen Energy LLC v. Brooks*, No. 20-CV-3746, 2020 WL 4038353, at *4 (S.D.N.Y. July 17, 2020) (quoting *Baliga ex rel. Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212, 220 (S.D.N.Y. 2019)). However, this does not require that a plaintiff exhaust any other efforts prescribed by Rule 4(f). *See Advanced Aerofoil Techs., AG v. Todaro*, No.-CV-9505, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012) ("Service under subsection (3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant.") (internal quotations omitted).

Here, the SEC met its burden of showing that it reasonably attempted to serve Watson by other means and that such attempts—made over the course of a few years—were so unavailing that the Court's involvement was necessary. The SEC pointed to its attempts to find Watson's present address through open-source information, which yielded a possible address in Ibiza, Spain. What followed was a request by the SEC to the Spanish Central Authority to serve Watson at this address, which resulted in two unsuccessful attempts to serve Watson at that address. The SEC also communicated with Watson's purported counsel, who stated that they were not authorized to accept service on Watson's behalf.

Watson objects to the reasonableness of these efforts, but his objections are unavailing. According to Watson, the SEC had various pieces of contact information that they could have used to contact him, and he also argues that the SEC failed to verify his address. He concludes that due to these shortcomings, the service fails to meet the due process standards pursuant to the Hague Convention. But the SEC was not required to exhaust all efforts before seeking alternative service. *See In re BRF S.A. Secs. Litig.*, No. 18-CV-2213, 2019 WL 257971, at *2 (S.D.N.Y. Jan. 18, 2019) ("However, those considerations guide the exercise of discretion, and are not akin to an exhaustion requirement."). Here, the Court found that alternative service was necessary and Watson asserts no grounds warranting the Court's reconsideration of its position. *See Hardin v. Tron Found.*, No. 20-CV-2804, 2020 WL 5236941, at *1, 2 (S.D.N.Y. Sept. 1, 2020) (finding that plaintiff made reasonable attempts to effect service after they requested service from the Chinese Central Authority and received no response, thereby requiring the district court's intervention).

Watson also contends that service by publication fails to meet the standards for due process set forth in the Hague Convention, but this argument also falls short. First, the Hague

12

Convention does not prohibit service by publication. Moreover, due process requires that service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). It is reasonably calculated that Watson, who has significant business experience, read *The International New York Times*. In *SEC v. Tome*, the Second Circuit affirmed service by publication in *The International Herald Tribune* (the same publication now published as *The International New York Times*[2]) upon a finding that the publication was "widely read by the international financial community in Europe." 833 F.2d 1086, 1091, 1094 (2d. Cir. 1987).

Moreover, Courts have also found that where a defendant has actual knowledge of the suit against them and the defendant is served by publication, due process is met. *See Tome*, 833 F.2d at 1094 (concluding that defendants—who were aware of the SEC's investigation—had an opportunity to be heard but ignored the action); *see also SEC v. Shehyn,* No. 04-CV-2003, 2008 WL 6150322, at *4 (S.D.N.Y. Nov. 26, 2008) (finding service by publication permissible where service through the Hague Convention in Spain was unsuccessful and where the record indicated the defendant's apparent awareness of the lawsuits, as well as his efforts to resist service). The Court similarly finds that Watson's knowledge of the SEC's lawsuit—when viewed in conjunction with the valid alternative service already ordered by the Court—means that Watson's due process rights were not violated and that he was properly served in this action. The Court therefore concludes that the Complaint survives as against Watson.

---

[2] *See* Christine Haugney & Eric Pfanner, *At 125 Years, a Rechristening for The Herald Tribune*, N.Y. Times, Feb. 25, 2013), https://www.nytimes.com/2013/02/26/business/media/herald-tribune-to-be-renamed-the-international-new-york-times.html.

### III. Watson's Amended Counterclaim Fails Because it Is Precluded by Section 21(g) of the Exchange Act

The Court now considers whether Watson's Amended Counterclaim can survive. Section 21(g) of the Exchange Act states:

> Notwithstanding the provisions of section 1407(a) of title 28, or any other provision of law, no action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

15 U.S.C. § 78u(g)). "[T]his provision bars 'claims for damages by non-SEC parties . . . (without the SEC's consent) in the enforcement action to which they purport to relate.'" *SEC v. Ripple Labs, Inc.*, No. 20-CV-10832, 2021 WL 4555352, at *2 (S.D.N.Y. Oct. 4, 2021) (citing *SEC v. Caledonian Bank, Ltd.*, 317 F.R.D. 358, 367–68 (S.D.N.Y. 2016)). The moving papers and the record indicate that the SEC has not consented to the integration of Watson's Amended Counterclaim in this suit. *See* ECF No. 102 at 22 ("Section 21(g) thus functions as an absolute bar against the consolidation of counterclaims in Commission enforcement proceedings when the Commission does not consent to such consolidation, *as it does not here*.") (emphasis added).

Watson construes the SEC's reliance on Section 21(g) as a "shield," one which is improper and misplaced because the "SEC's actions in this case clearly demonstrate selective enforcement and misconduct." *See* ECF No. 105-1 at 1, 4. Watson concedes that the purpose of Section 21(g) is to prevent delays in enforcement actions, but he argues that the SEC itself has protracted the litigation given its "failure to properly serve [him], their lack of communication, and their withholding of exculpatory evidence[.]" *See id.* at 4. Watson also notes that the SEC stated to him that "nobody, not you or anyone, is by law allowed to counter-sue the SEC[,]" which he construes as "an unjustified and overly broad interpretation of the law, aimed at

14

intimidating Watson and discouraging him from pursuing his legal rights." ECF No. 98 ¶ 42. However, the Court's obligation in deciding the SEC's motion to dismiss Watson's Amended Counterclaim is not to opine upon the wisdom of Rule 21 (g) or determine whether discovery may reveal favorable evidence to Watson. Rather, the Court must decide in the first instance whether Watson can include his Amended Counterclaim in this proceeding.

To show that he can raise his counterclaims in this action, Watson cites in his opposition a case, *SEC v. Sprecher*, which purportedly stands for the proposition that "counterclaims should be allowed where there are serious due process violations." *Id.* Watson does not provide a full citation in his opposition, but cites *SEC v. Sprecher*, 594 F.2d 317 (2d Cir. 1979) in his Amended Counterclaim for the proposition that "in exceptional circumstances, counterclaims against the SEC might be permitted where they are 'inextricably intertwined' with the SEC's claim." ECF No. 98 ¶ 13. The Court can neither identify the quoted language nor find any support for Watson's position, nor even a discussion of Section 21(g) in this case. To the extent Watson may be referring to an identically titled case that in fact deals with Section 21(g), *SEC v. Sprecher*, No. 92-CV-2860, 1993 WL 544306 (D.D.C. Dec. 16, 1993), the case is equally unhelpful. In that case, the court granted the SEC's motion to dismiss the defendant's counterclaim precisely because Section 21(g) barred it and, more importantly, the court did not outline any exceptions to this prohibition. *Sprecher*, 1993 WL 544306, at *3. Similarly here, where the SEC has not consented to the integration of Watson's counterclaims, Watson's Amended Counterclaim must be dismissed. Moreover, because any further amendment would be futile, Watson is denied leave to file any further counterclaims in this action.

## CONCLUSION

For the reasons stated above, Watson's motion to dismiss the Complaint is **DENIED** with prejudice and the SEC's motion to dismiss the Amended Counterclaim is **GRANTED** with

prejudice. Because Watson's motion to dismiss the Complaint was a pre-answer motion, Watson is **ORDERED** to file an Answer to the SEC's Complaint twenty-one (21) days following the entry of this order and opinion.

In a separate order, the Court will refer this case to Magistrate Judge Valerie Figueredo for all general pretrial and settlement purposes. The Clerk of Court is respectfully directed to terminate the SEC's pending motion docketed at ECF No. 100.

**SO ORDERED.**

**Dated:**     **June 30, 2025**
              **New York, NY**

                                        **ANDREW L. CARTER, JR.**
                                        **United States District Judge**